## JACKSON et al. v. MOORE et al.

No. 10901—Opinion Filed July 13, 1920.

(Syllabus by the Court.)

**1. Pleading—Petition—Construction on Demurrer.**

On a demurrer to a petition as defective, in that it does not state facts sufficient to constitute a cause of action, the petition must be liberally construed, and all its allegations taken as true for the purpose of the demurrer.

**2. Same.**

A demurrer to a petition because not stating facts sufficient to constitute a cause of action, can be sustained only where the petition contains defects so substantial and fatal as to authorize the court to say that, taking all the facts to be admitted, they furnish no cause of action, and if the facts stated therein entitled plaintiff to any relief, a demurrer for want of sufficient facts should be overruled.

**3. Oil and Gas—Suit to Cancel Lease—Sufficiency of Petition.**

Record examined, and held, that the trial court erred in sustaining the separate demurrers of the defendants to the petition of the plaintiffs, and the judgment reversed and the cause remanded, with directions.

Error from District Court, Pawnee County; Redmond S. Cole, Judge.

Action by S. G. Jackson, M. J. Hyland and B. F. Foerster against A. J. Moore, Maggie Moore, Carl D. Smith, and the Twin State Oil Company to cancel oil lease and for other relief. Judgment for defendants on demurrers to petition, and plaintiffs bring error. Reversed and remanded, with directions.

W. S. Cline and C. L. Pinkham, for plaintiffs in error.

W. J. Gregg, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Pawnee county, Hon. Redmond S. Cole, Judge.

On May 10, 1919, the plaintiffs in error, who were plaintiffs below, commenced an action against the defendants in error, who were defendants below, to cancel a certain oil and gas lease granted by the defendants Moore to the defendant Twin State Oil Company, covering the S. ½ of the N. E. ¼ of section 12, twp. 20 N., range 7 east, in Pawnee county, and for a receiver and for an accounting of all the oil and gas products on said land, and to recover the proceeds arising from the sale of the same, and for a decree of confirmation of a certain oil and gas lease from the defendants Moore to the plaintiff Jackson of a prior date and covering said

land, and for an injunction against the defendants enjoining them from asserting or claiming any right, title, or interest in said land for the oil and gas produced therefrom adverse to the plaintiffs, and to have all other equitable relief to which the plaintiffs might be entitled.

From a judgment of the court sustaining the separate demurrers of the defendants to the plaintiffs' petition and dismissing the plaintiffs' suit, with prejudice, the plaintiffs have regularly commenced this proceeding in error by filing petition in error with case-made attached, their assignments of error being:

"1. The said trial court erred in sustaining the demurrers of the said defendants in error to the plaintiffs in error's petition.

"2. Said court erred in rendering judgment for the defendants in error on the petition of the plaintiffs in error filed in said court."

The material allegations of the plaintiffs' petition show, in substance, that on the 12th day of October, 1917, defendants Moore executed to the plaintiff S. G. Jackson an oil and gas mining lease covering the land mentioned for a period of five years for a bonus of $1,200, to be delivered to said Jackson on the 28th day of February, 1918, on the payment of said sum, and that said sum was paid, the lease delivered, and recorded in Book 26 of the Misc. Record of said county at page 76, and that thereafter, on March 6th, the said plaintiff assigned an undivided one-fourth interest in the east 40 acres to M. J. Hyland, which assignment was regularly recorded in the office of the county clerk in said county, and that on the said date the said S. G. Jackson assigned an undivided one-half interest in said 40 acres to B. L. Foerster, which assignment was duly recorded in the office of the county clerk of said county. Copies of said lease and assignments were made exhibits to the plaintiffs' petition, marked "A," "B," and "C".

Paragraphs 4, 5, 6, 7, 8, 9, and 10 of the plaintiffs' petition were as follows:

4. "Plaintiffs further allege that by the terms and conditions of said lease, 'if no well be commenced on said land on or before the 1st day of March, 1918, the lessee on or before said date shall pay or tender to the lessor, or deposit to the lessor's credit in the First State Bank, at Terlton, Oklahoma, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of sixty (60) dollars a month in advance till royalty exceeds rental, which shall operate as rental for one month until a well is commenced on said premises.' That no well was commenced

on said land on or before the 1st day of March, 1918, and that in pursuance to the terms and conditions of said lease the plaintiff, S. G. Jackson, on the 28th day of February, 1918, paid to the defendants, A. J. Moore and Maggie Moore, sixty (60) dollars; the rental provided for in the terms of said lease, and that the rentals provided for in said oil and gas lease have all been paid as in said oil and gas lease provided and all of the terms and conditions of said oil and gas lease have been fully performed and complied with by the said plaintiffs, and that said lease at all times herein mentioned from the 28th day of February, 1918, to this date has been and is in full force and effect, a binding and subsisting lease in favor of the plaintiffs herein on the land of the said defendants herein described."

5. "Plaintiffs further allege that on the 3rd day of June, 1918, the defendants, A. J. Moore and Maggie Moore, made, executed and delivered to the Twin State Oil Company, a corporation, their oil and gas lease on the said land herein described and on which they had heretofore given an oil and gas lease to the plaintiff S. G. Jackson, as herein set forth, in disregard and violation of the rights of the plaintiffs acquired by the lease given to the said S. G. Jackson as herein pleaded. That in the leasing of the said land to the Twin State Oil Company, the said defendants, A. J. Moore and Maggie Moore, executed their said lease on the said land as Andrew J. Moore and Lydia M. Moore; the plaintiffs allege that Andrew J. Moore and Lydia M. Moore, lessors in said lease, are the same and identical persons as A. J. Moore and Maggie Moore, the defendants herein. That the said lease to the Twin State Oil Company was filed for record by the Twin State Oil Company on the 14th day of June, 1918, and recorded in Book 5 of Oil and Gas Leases at page 98 in the office of the county clerk of Pawnee county, state of Oklahoma. A true and correct copy of said lease with all indorsements thereon is hereto attached, marked 'Exhibit D,' and made a part of this petition."

6. "Plaintiffs allege that the Twin State Oil Company, a corporation, at the time of the taking and receiving of the said lease from the said defendants, A. J. Moore and Maggie Moore, had actual knowledge as well as constructive knowledge, by reason of the recording of the lease of the said S. G. Jackson's, of the said lease."

7. "Plaintiffs allege that in the payment of the rentals provided in said lease time of the payment of said rentals was not made the essence thereof, and in the transaction between S. G. Jackson and the defendants, A. J. Moore and Maggie Moore, leading up to the delivery of the said lease on the 28th day of February, 1918, and in payment of the rental thereafter due under the terms of said lease

the defendants, A. J. Moore and Maggie Moore, led these plaintiffs to believe that the said defendants, A. J. Moore and Maggie Moore, did not regard time of the payment any part of the consideration for said lease and for the rentals therein provided as of the essence of said lease."

8. "That the said S. G. Jackson at the time of the execution of said lease, to wit: on the 12th day of October, 1917, obtained an option for the purchase of said lease for a period of sixty days; the said lease was for the consideration of twelve hundred ($1,200.00) dollars and said lease was deposited in escrow in the First State Bank at Terlton, Oklahoma, and one hundred ($100.00) dollars in said lease of $1,200.00 was on the above date paid to the said defendants, A. J. Moore and Maggie Moore, leaving a balance due on said lease in the sum of eleven hundred ($1,100.00) dollars to be paid in sixty days thereafter. That on the 13th day of December, 1917, an extension agreement was entered into for a period of thirty days, wherein and whereby the said S. G. Jackson paid one hundred ($100 00) dollars to apply on the balance of the purchase price of said lease and was to pay the balance of $1,000.00 in thirty days. That on January 18, 1918, an additional extension of the payment of the balance of said purchase price was obtained, at which time the said S. G. Jackson paid one hundred ($100.00) dollars on the balance of the purchase price, and on February 28, 1918, the said S. G. Jackson paid the balance of the original contract price in the sum of nine hundred ($900.00) dollars, and on said date paid sixty ($60.00) dollars rental, being the first rental due under the terms of said lease.

"That on April 1, 1918, the plaintiffs paid rental on said lease in the sum of sixty ($60.00) dollars, all of which payments on the purchase price of said lease and on the rental thereof were received and accepted by the said defendants, A. J. Moore and Maggie Moore, although paid out of time, and that by the acts and conduct of the said A. J. Moore and Maggie Moore the said A. J. Moore and Maggie Moore were and are estopped from pleading or otherwise contending that time of payment was the essence of said lease, and all of which facts herein pleaded were known to or could have been ascertained by the defendant Twin State Oil Company. That on June 3, 1918, the plaintiffs deposited in the First State Bank at Terlton, Oklahoma, to the credit of the lessors, A. J. Moore and Maggie Moore, sixty dollars rental for the month beginning with June 1, 1918, and the said plaintiffs have continued to deposit in the First State Bank at Terlton each and every month thereafter down to the present time rentals for the credit of the lessors, A. J. Moore and Maggie Moore, in the sum of sixty ($60.00) dollars per month.

"That under the terms and conditions of said lease, said lease provides for the payment of sixty dollars for the month beginning March 1, 1918, which shall operate as a rental for the month of March, 1918, and shall pay a like sum in advance each year beginning with April 1, 1918, until a well is commenced on said premises; that under the terms of said lease the $60.00 rental paid April 1, 1918, paid the rental on said lease to April 1, 1919, but that notwithstanding the terms of said lease the said plaintiffs have paid as aforesaid into the First State Bank at Terlton, Oklahoma, to the credit of the lessors, sixty dollars per month; that for the month of June, 1918, the sixty dollars was paid into the First State Bank at Terlton, Oklahoma, for the credit of the lessors on the 3rd day of June, 1918, said rental being received and accepted by the said bank on the said 3rd day of June, 1918. The plaintiffs allege that S. G. Jackson, one of the plaintiffs, on behalf of the plaintiffs, had paid the rental for the plaintiffs as in said lease provided, and that the plaintiffs, M. J. Hyland and B. L. Foerster, had given their part of the lease rental money to the said S. G. Jackson on or prior to the 1st day of June, 1918, to be remitted to the said bank for the lessors' credit; that the said S. G. Jackson, by reason of being detained on June 1, 1918, some eight or ten miles in the country and some eight or ten miles away from a post office and all other facilities for the transmission of the rental to the First State Bank at Terlton, Oklahoma, was unable and failed to remit said rent on the said 1st day of June, 1918; that by reason of the lessors theretofore dealing with said plaintiffs in a lenient manner in receiving payments for the purchase price of the lease and in receiving the rental for the month of May, 1918, on the 2nd day of May thereof, if there was any rental due on said date under the terms of said lease, the said plaintiffs were to believe and did believe that the lessors would not exact of them the payment of the rentals on the first day of the month and did not regard that time was of the essence of said lease. That the plaintiffs had no intention of forfeiting said lease and which said fact the defendants knew full well. That the defendant, Carl D. Smith, appeared to have some interest in said lease of the Twin State Oil Company, by reason of an assignment to him of a one-sixteenth interest of the Twin State Oil Company. Said assignment is recorded in Misc. Record 27, page 215, in the office of the county clerk of Pawnee county, Oklahoma."

9. "That the lessors, A. J. Moore and Maggie Moore, and the defendant, Twin State Oil Company, have conspired and contrived to cheat and defraud the plaintiffs out of their lease on the said land; that the plaintiffs' lease on the said land is of great value and was of great value on the 3rd day of June, 1918; that the Twin State Oil Com-

pany, in disregard of the right of the plaintiffs herein, have caused to be drilled on said land, a well, in which the said Twin State Oil Company is producing oil in some considerable quantity, the exact amount of which these plaintiffs are not informed, and that they are producing gas in large quantities from said well drilled on said land and marketing the said oil and gas and are receiving great benefits and profits therefrom in disregard and in violation of the rights of the plaintiffs."

10. "The plaintiffs further charge that the said Twin State Oil Company is continuing and threatening to continue to extract oil and gas from the said land covered by the lease of the plaintiffs herein, as aforesaid, to the great and irreparable loss and damage to the plaintiffs; that the gas and the oil extracted from said land by the Twin State Oil Company is the property of the plaintiffs and that the same is being converted by the Twin State Oil Company to their own use and benefit; that the plaintiffs are entitled to obtain discovery and to have an accounting in respect to the oil and gas produced and sold in the course of the operations by the said Twin State Oil Company and to have a receiver appointed to receive and collect for the oil and gas to be hereafter produced by the Twin State Oil Company pending this litigation; and that the lease of the said Twin State Oil Company should be enjoined from, in any manner, interfering with the plaintiffs in the full, complete enjoyment and operation of the said land as in their lease provided."

The plaintiffs' lease contained the following stipulations:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, unless the same is sooner surrendered by lessee, and that the consideration above stated is paid and accepted as a good and sufficient consideration for each and every right or privilege granted to lessee herein, including the right to pay rentals in lieu of drilling wells and the right to surrender this lease as hereinafter provided.

"If no well be commenced on said land on or before the 1st day of March, 1918, the lessee on or before said date shall pay or tender to the lessor, or deposit to the lessor's credit in the First State Bank at Terlton, Oklahoma, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of sixty dollars a month in advance till royalty exceeds rental, which shall operate as rental for one month thereafter, and shall continue to pay a like sum each year in advance until a well is commenced on said premises."

The other provisions of the lease were such as for the most part are usually in commercial leases, except as hereinafter noted. This was not an "or" lease, nor was it an "unless" lease, but is self-classified by its own terms. It contained no forfeiture clause. It was a lease for a term of five years, in which it was agreed that, "if no well be commenced on said land on or before the 1st day of March, 1918, the lessee on or before said date shall pay to the lessors' credit (which was payment) in the First State Bank at Terlton, Oklahoma, the sum of sixty dollars a month in advance till royalty exceeds rental, which shall operate as rental for one month thereafter, and shall continue to pay a like sum each year in advance until a well is commenced on said premises."

The plaintiffs' petition alleged that no well was commenced on said land by the plaintiffs before the first of March, 1918, but that the monthly payments stipulated for in the lease had all been paid and all the terms and conditions had been performed and complied with by the plaintiffs, and that the said lease, at all times mentioned, from the 28th day of February, 1918, to the filing of the petition, had been in full force and effect, binding and subsisting in favor of the plaintiff.

The plaintiffs charge in the fifth paragraph of their petition that on the 3rd day of June, 1918, the defendants Moore, in disregard and violation of the rights of the plaintiffs, executed a lease to the defendant oil company covering the same land, and allege that the oil company had notice, both actual and constructive of the plaintiffs' lease by reason of the recordation thereof. The plaintiffs allege in the ninth paragraph of the petition that the defendants Moore and the defendant Twin State Oil Company have conspired and contrived to cheat and defraud the plaintiffs out of their lease on said land, and that the defendant oil company, in disregard of the rights of plaintiffs, has caused to be drilled on said land a well, which is producing oil and gas in considerable quantities, and is marketing the said oil and gas and receiving great benefits and profits therefor in disregard and in violation of the rights of the plaintiffs, and is continuing and threatening to continue to extract oil and gas from said land to the great and irreparable loss and damage to the plaintiffs.

Counsel for the defendants in error say in their brief:

"The first two grounds of the demurrers will be waived, and the third and fourth may be considered together. They are: 'Third. That there is a misjoinder of causes of action in said petition, it appearing upon the face of plaintiffs' petition that there are several causes of action therein, improperly

joined. Fourth. That plaintiffs' petition shows upon its face that the several plaintiffs have no joint cause of action against the several defendants named therein, and are not entitled to a joint judgment against the defendants therein."

Revised Laws 1910, provide:

4690. "All persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article."

4691. "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

We think it is clear, from an examination of the petition and the exhibits thereto attached, and under the provision of the statutes, supra, that the contention made by the defendants under the third and fourth paragraphs of the separate answers, supra, are without merit. Burkett v. Lehman-Higginson Gro. Co., 8 Okla. 84, 56 Pac. 856; Kolachny v. Galbreath et al., 26 Okla. 772, 110 Pac. 902.

The fifth and last ground of the defendants' separate demurrers is:

"That plaintiffs' petition does not allege a state of facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendants, and to entitle plaintiffs to any judgment against the defendants."

This is a general demurrer and goes to the sufficiency of the petition of the plaintiffs as a whole. Where a general demurrer is lodged against a petition, the rules of law that govern have frequently been announced by this court, and are clearly stated in the case of Oklahoma Sash & Door Co. v. American Bonding Co., 67 Oklahoma, 170 Pac. 511, as stated in the syllabus, and are as follows:

1. "On demurrer to a petition as defective, in that it does not state facts sufficient to constitute a cause of action, the petition must be liberally construed, and all its allegations taken as true for the purpose of the demurrer.

2. "A demurrer to a petition because not stating facts sufficient to constitute a cause of action, can be sustained only where the petition contains defects so substantial and fatal as to authorize the court to say that, taking all the facts to be admitted, they furnish no cause of action, and if the facts stated therein entitled plaintiff to any relief, a demurrer for want of sufficient facts should be overruled." Smith-Wogan Hdw.

Co. v. Moon Buggy Co., 26 Okla. 161, 108 Pac. 1103.

Applying these rules, we are convinced from an examination of the petition of the plaintiffs that the same stated a cause of action, and that the trial court erred in sustaining the separate demurrers of the defendants, and in dismissing the plaintiffs' suit with prejudice. The judgment of the trial court is, therefore, reversed, and the cause remanded, with directions to overrule the separate demurrers of the defendants.

RAINEY, C. J., and HARRISON, PITCHFORD, and McNEILL, JJ., concur.